ACCEPTED
13-14-00338-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
8/5/2015 3:31:48 PM
CECILE FOY GSANGER
CLERK

## No. 13-14-338-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
8/5/2015 3:31:48 PM
CECILE FOY GSANGER
Clerk

# JOHNNY FLORES,
## APPELLANT,

## v.

# THE STATE OF TEXAS,
## APPELLEE.

## ON APPEAL FROM THE 148TH DISTRICT COURT
## NUECES COUNTY, TEXAS

## BRIEF FOR THE STATE

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

Attorney for Appellee

## ORAL ARGUMENT IS NOT REQUESTED

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................ ii

SUMMARY OF THE ARGUMENT ............................................................1

ARGUMENT ...............................................................................................2

**Reply Point.**
**The trial court properly denied Flores' request for a charge on**
**manslaughter as a lesser-included offense.**....................................................2

    **I. Statement of Facts.**...............................................................2
    **II. The *Rousseau* Test and the Cognate-Pleadings Approach.**.........3
    **III.  First Prong.**....................................................................5
    **IV.  Second Prong.**.................................................................9

PRAYER ................................................................................................ 12

RULE 9.4 (i) CERTIFICATION ................................................................ 12

CERTIFICATE OF SERVICE .................................................................. 13

# INDEX OF AUTHORITIES

## Cases

*Bell v. State,* 501 S.W.2d 137 (Tex. Crim. App. 1973)...................................8

*Bell v. State,* 693 S.W.2d 434 (Tex. Crim. App. 1985)...................................9

*Cavazos v. State*, 382 S.W.3d 377 (Tex. Crim. App. 2012)................... passim

*Flanagan v. State,* 675 S.W.2d 734 (Tex. Crim. App. 1984).........................8

*Godsey v. State,* 719 S.W.2d 578 (Tex. Crim. App. 1986). ...........................8

*McKithan v. State,* 324 S.W.3d 582 (Tex. Crim. App. 2010). ........................4

*Meine v. State*, 356 S.W.3d 605 (Tex. App.—Corpus Christi 2011, pet. ref'd). .............................................................. 4, 10

*State v. Meru*, 414 S.W.3d 159 (Tex. Crim. App. 2013)................................7

*Rousseau v. State,* 855 S.W.2d 666 (Tex. Crim. App. 1993).........................3

*Saunders v. State,* 840 S.W.2d 390 (Tex. Crim. App. 1992). ........................9

*Ex parte Watson,* 306 S.W.3d 259 (Tex. Crim. App. 2009). .........................4

## Statutes & Rules

Tex. Pen. Code § 1.07....................................................... 5, 8, 10

Tex. Pen. Code § 6.03....................................................... 5, 10

Tex. Pen. Code § 19.02...................................................... 5, 10

Tex. Pen. Code § 19.04...................................................... 5, 10

The Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/asphyxia (last accessed August 4, 2015). ................8

NO. 13-14-338-CR

| | | |
|---|---|---|
| JOHNNY FLORES, | § | COURT OF APPEALS |
| Appellant, | § | |
| | § | |
| V. | § | FOR THE THIRTEENTH |
| | § | |
| THE STATE OF TEXAS, | § | |
| Appellee. | § | DISTRICT OF TEXAS |

## BRIEF FOR THE STATE

TO THE HONORABLE COURT OF APPEALS:

## SUMMARY OF THE ARGUMENT

The trial court properly denied a charge on manslaughter because murder, as charged in the present indictment, does not share the same culpable mental state with manslaughter concerning the risk of death. In addition, even if such a mental state is read into the present indictment, there was no evidence in the present case that Flores could have been guilty only of the lesser offense of manslaughter.

# ARGUMENT

## Reply Point.
### The trial court properly denied Flores' request for a charge on manslaughter as a lesser-included offense.

### I. Statement of Facts.

The following evidence was presented at trial relevant to Flores' mental state at the time he killed the victim by assaulting and asphyxiating her.

In his 9-1-1 call, Flores admitted to the operator that he killed his girlfriend by suffocating her (SX # 4; admitted and played for jury at RR vol. 3, p. 36)

In his recorded confession to the police, when asked what happened on the night of the killing, Flores said, "I just lost it." He later repeated that he "lost it" or "snapped." Specifically, Flores claimed that he was angry with the victim for giving him a sexually transmitted disease, and that this anger "pushed [him] over the edge," that he and the victim started fighting, that she scratched him, and that he hit her. Flores admitted to hitting, slapping and choking the victim, and that he was mad and angry at the time. Flores did not know how long he choked the victim, but claimed that when she stopped fighting he "snapped out of it" and checked her pulse. (SX # 82; admitted and played for jury at RR vol. 3, pp. 141-42)

2

Dr. Ray Fernandez, the medical examiner, testified that the cause of the victim's death was mechanical asphyxia, which he explained to be an outside force pushing on the body and causing a blockage of the mouth, nose, and/or neck. (RR vol. 3, p. 200) The injuries Dr. Fernandez found on the victim included a stab wound to the right temple, scrapes and bruises to the face, a fractured nose, and fractured teeth. (RR vol. 3, pp. 200-01)

Dr. Troy Martinez, a forensic psychologist who examined Flores, testified that when someone with the mental illness Flores had is off their medication, this can effect their impulse control, and they can act "recklessly," which to Dr. Martinez meant impulsive or irrational behavior. (RR vol. 4, pp. 82-83)

## II. The *Rousseau* Test and the Cognate-Pleadings Approach.

A two-prong test applies to determine whether an instruction on a lesser-included offense should be given to the jury: First, the court determines if the proof necessary to estblish the charged offense also includes the lesser offense; Second, if this threshold is met, the court must then consider whether the evidence shows that if the defendant is guilty, he is guilty only of the lesser offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012); *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.

3

Crim. App. 1993); *Meine v. State*, 356 S.W.3d 605, 612 (Tex. App.—Corpus Christi 2011, pet. ref'd).

The first prong of this test is evaluated under the cognate-pleadings approach, which asks whether "the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense, or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Cavazos*, 382 S.W.3d at 382 (citing *Ex parte Watson,* 306 S.W.3d 259 (Tex. Crim. App. 2009) (op. on reh'g)). The Court in *Cavazos* explained that "the elements of the lesser-included offense do not have to be pleaded in the indictment if they can be deduced from facts alleged in the indictment. In this situation, the functional-equivalence concept may be part of the lesser-included-offense analysis. Using functional-equivalence, the court must 'examine the elements of the lesser offense and decide whether they are functionally the same or less than those required to prove the charged offense.'" 382 S.W.3d at 383 (quoting *McKithan v. State,* 324 S.W.3d 582, 588 (Tex. Crim. App. 2010)).

# III. First Prong.

The relevant elements of Murder and Manslaughter in the present case are contained in the following statutory excerpts:

*Murder.*

(b) A person commits an offense if he:
   (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual;
Tex. Pen. Code § 19.02.

(a) In this code:
   (46) "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.
Tex. Pen. Code § 1.07.

*Manslaughter.*

(a) A person commits an offense if he recklessly causes the death of an individual.
Tex. Pen. Code § 19.04.

(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.
Tex. Pen. Code § 6.03.

The Court of Criminal Appeals has acknowledged that, with regard to a Subsection (b)(2) murder, the only specified *mens rea* is "the intent to cause serious bodily injury and the statute does not add a culpable mental state to the conduct that caused the death," while manslaughter does require a reckless mental state concerning the risk that death will occur. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012). In *Cavazos*, however, the indictment included an allegation that the clearly dangerous act that caused death was "shooting [the victim] with a firearm." *Id.* at 380. The majority opinion reasoned that this additional allegation of use of a firearm, as a deadly weapon per se, carried with it an inference that the defendant intended to cause the victim's death, thus under the cognate-pleadings functional-equivalence concept supplying through the indictment the greater *mens rea* necessary to make this particular Subsection (b)(2) murder the greater offense, and manslaughter the lesser offense, for purposes of the defendant's entitlement to a charge on the lesser offense. *Id.* at 383-84.

In her concurrence, Presiding Judge Keller further explained why, under ordinary circumstances and without the boost that the majority inferred from the deadly weapon addition in the indictment, a Subsection (b)(2) murder does not contain the same elements as manslaughter:

> The State's task is more difficult if it must prove that the defendant contemplated causing "death" than if it need only prove that the

6

defendant contemplated causing "serious bodily injury."  So, while the culpable mental state of "intent" found in § 19.02(b)(2) is greater than the culpable mental state of "recklessness" found in the offense of manslaughter, the contemplated injury that must be proven in a § 19.02(b)(2) murder prosecution (serious bodily injury) is less than the contemplated injury that must be proven in a manslaughter prosecution (death).  So, manslaughter does not differ from § 19.02(b)(2) murder solely on the basis of a lesser culpable mental state because manslaughter also differs by requiring proof of a greater contemplated injury.  Consequently, manslaughter is not a lesser-included offense of § 19.02(b)(2) murder.

*Id.* at 388 (Keller, P.J., concurring).  More recently, the Court of Criminal Appeals has again acknowledged that Subsection (b)(2) murder and manslaughter contain divergent elements and that application of the functional-equivalence test was necessary in *Cavazos* to bridge the gap by means of the allegation of "shooting with a firearm."  *See State v. Meru*, 414 S.W.3d 159, 167 n.2 (Tex. Crim. App. 2013)

In the present case, the indictment charged, in pertinent part, that Johnny Flores, "on or about JULY 4, 2013, in Nueces County, Texas, did then and there with the intent to cause serious bodily injury to an individual, namely, TERRY MECHELL RAMOS, commit and [sic] act clearly dangerous to human life that caused the death of said TERRY MECHELL RAMOS, by asphyxia."  (CR p. 7)

Accordingly, there was no deadly weapon allegation, and thus no inference that Flores intended to cause anything greater than serious bodily

injury.  Nor did the allegation that he caused the death "by asphyxia" carry the same inference that use of a firearm did in *Cavazos*.

The term "asphyxia" is defined as "a lack of oxygen or excess of carbon dioxide in the body that results in unconsciousness and often death and is usually caused by interruption of breathing or inadequate oxygen supply."  The Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/asphyxia (last accessed August 4, 2015).

While shooting with a firearm as a deadly weapon has a long history of presumed intent to kill, *see Cavazos*, 382 S.W.3d at 384; *Godsey v. State,* 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986); *Flanagan v. State,* 675 S.W.2d 734, 744 (Tex. Crim. App. 1984); *Bell v. State,* 501 S.W.2d 137, 138 (Tex. Crim. App. 1973), "by asphyxia" is a nebulous term that says nothing about the means used by the defendant and could be accomplished in many different ways, some of which may involve only intent to injure or incapacitate rather than intent to kill.  It is, for example, possible that the defendant intended by beating and choking the victim to cause serious bodily injury in the form of "serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ" *see* Tex. Penal Code § 1.07 (a)(46), yet not to cause her death.  Flores in his appellate brief implies that his breaking of the victim's nose, which suggests

8

disfigurement and protracted loss or impairment of function, may in turn have caused obstruction of her airway and asphyxiation. (Flores Brief pp. 2-3)

Therefore, in the present case, unlike *Cavazos*, manslaughter fails the first prong of the *Aguilar/Rousseau* test and was properly denied as a lesser-included offense.

## IV.  Second Prong.

Under the second prong, a defendant is entitled to an instruction on a lesser-included offense if some evidence from any source raises a fact issue on whether he is guilty of only the lesser, regardless of whether the evidence is weak, impeached, or contradicted. *Cavazos*, 382 S.W.3d at 383 (citing *Bell v. State,* 693 S.W.2d 434, 442 (Tex. Crim. App. 1985)).

Evidence may indicate that a defendant is guilty of only the lesser offense either by refuting or negating other evidence establishing the greater offense, or by showing that the defendant's awareness of the risk may be subject to two different interpretations. *Cavazos*, 382 S.W.3d at 385 (citing *Saunders v. State,* 840 S.W.2d 390, 391 (Tex. Crim. App. 1992)).

However, as the Court in *Cavazos* stated, "[m]eeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of

9

the greater offense." 382 S.W.3d at 385; *see also Meine v. State*, 356 S.W.3d 605, 612 (Tex. App.—Corpus Christi 2011, pet. ref'd) (requiring affirmative evidence of a lower culpable mental state in order to entitle the defendant to an instruction on the requested lesser offense).

Specifically, as applied to a request for manslaughter in the context of a Subsection (b)(2) murder by shooting charge, "[t]here must be some affirmative evidence that Appellant did not intend to cause serious bodily injury when he shot the victim, and must be some affirmative evidence from which a rational juror could infer that Appellant was aware of but consciously disregarded a substantial and unjustifiable risk that death would occur as a result of his conduct." *Cavazos*, 382 S.W.3d at 385.

In the present case, even assuming that, under the functional-equivalence concept, the present indictment does charge an intent to cause death or a substantial risk thereof, what separates murder from manslaughter is the razor-thin difference between intent to cause bodily injury that creates a substantial risk of death, *see* Tex. Penal Code §§ 19.02 (b)(2) and 1.07 (a)(46), and awareness of but consciously disregarding a substantial risk of death. *See* Tex. Penal Code §§ 19.04 (a) and 6.03 (c).

In other words, was there some affirmative evidence in the present case to show that Flores did not intend to inflict an injury serious enough to

10

create a substantial risk of death but was aware that he was inflicting such an injury and consciously disregarded the risk?

Yet, there is no indication that Flores did not intend to injure the victim when he violently assaulted her. His claims to having "lost it" and his possible impulsiveness due to mental illness do nothing to negate that intent. That being the case, it is hard to imagine a situation in which he did not intend serious bodily injury, in the sense of intending an injury that he knew would create a substantial risk of death [Subsection (b)(2) Murder], yet he did intend an injury that he was consciously aware would cause a substantial risk of death [Manslaughter]. Arguably, the two offenses merge in this situation, and Flores cannot be innocent of the greater and guilty of the lesser. He was either guilty of murder, or of neither offense.[1]

Accordingly, Flores was not entitled to a charge on the lesser offense, and his ground of error should be overruled.

---

[1] The State acknowledges that there could be a situation where the defendant arguably did not intend any injury or assaultive contact, but still engaged in reckless conduct that created a substantial risk of lethal injury, such as shooting a gun into a house without regard to whether it might be occupied or wildly swinging a baseball bat in a crowded room. In such a case, manslaughter could logically be a viable alternative to Subsection (b)(2) murder.

**PRAYER**

For the foregoing reasons, the State respectfully requests that the judgment of the trial court be affirmed.

Respectfully submitted,

/s/ *Douglas K. Norman*

_____

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

**RULE 9.4 (i) CERTIFICATION**

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 2,258.

/s/ *Douglas K. Norman*

_____

Douglas K. Norman

12

**CERTIFICATE OF SERVICE**

This is to certify that a copy of this brief was e-mailed on August 5,

2015, to Appellant's attorney, Nathan Burkett, burkett.nathan@gmail.com.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman